UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
AT COVINGTON
CIVIL ACTION NO. 06-28-DLB

NATIONAL INFORMATION AND
COMMUNICATIONS EQUIPMENT
NETWORK, INC., d/b/a
NICE NETWORK, INC.,                                                    PLAINTIFF

V.

PAUL A. WILLIGAN, et al.,                                              DEFENDANTS.

**MEMORANDUM ORDER**

On January 19, 2007, plaintiff moved to compel supplemental discovery responses from each of the three named defendants. Defendants have filed a response, to which the plaintiff has filed a reply. In addition to plaintiff's motion, counsel for defendant Michael Willigan has moved to withdraw from representation of that defendant alone, on the basis that defendant Michael Willigan "has instructed the undersigned to terminate his representation." The parties also have filed cross-motions for summary judgment.[1]

**I. Background**

A number of facts summarized in the district court's order denying plaintiff's motion for a preliminary injunction are relevant to the parties' current discovery dispute. They are repeated here for the convenience of the court:

Plaintiff, National Information and Communications Equipment Network, Inc.,

---

[1] Only pretrial non-dispositive motions have been referred to the undersigned pursuant to local practice; the cross-motions for summary judgment will be submitted to the presiding district judge.

was incorporated in the state of Indiana in 1989 and does business as NICE Network, Inc. ("NICE"). NICE provides consulting services to the insurance and transit industries, assisting in the evaluation of high value equipment loss claims. Andrew Fahey ("Fahey") is the founder of NICE and has at all times served as the company's President, controlling 98% of NICE's stock (the remaining two percent is held by Fahey's parents). Since 2002, NICE has maintained is [sic] principal place of business in Crescent Springs, Kentucky.

In 1991, NICE hired Defendant Paul Willigan ("Willigan") as a claims consultant. Willigan served as the Vice President of NICE from 1998 until his resignation on January 23, 2006. In January of 2002, Willigan relocated to Connecticut when his wife accepted a job offer in Hartford. Consequently, NICE established a virtual private network connection (VPN) for Willigan to facilitate his continued employment with NICE. The VPN allowed Willigan the ability to work from his home in Connecticut by permitting access to NICE's files and software systems via the company's network server housed in Kentucky.

....[Willigan] was an at-will employee, and later officer. Accordingly, there was never a covenant-not-to-compete made by Willigan and he was never subject to a non-competition agreement. This fact is not disputed by the parties.

Near the end of August 2005, Willigan and his brother, Michael Willigan, established Hitech Claims consulting ("Hitech") and registered the company as a limited liability company in Connecticut. .... Hitech is in the same business as, and is a direct competitor of, NICE.

....
The present action was commenced on February 8, 2006. Plaintiff alleges claims for civil conspiracy, breach of fiduciary duty, conversion, misappropriation of trade secrets, copyright violations, and tortious interference with business relationships. However, for purposes of the preliminary injunction, Plaintiff has confined their analysis to the breach of fiduciary duty and misappropriation of trade secrets claims.

....

...A breach of a fiduciary duty can take many forms. Simply because a breach is in the form of wrongful competition does not mean the claim merges into a non-compete framework. The conduct sought to be enjoined is not independently actionable because Willigan is at this stage competing lawfully with NICE based on the lack of any non-compete agreement. Any potential damages at trial will result only from harm associated with Willigan's alleged wrongful acts while employed at NICE, including, *inter alia*, a breach of his fiduciary duty as a corporate officer. Willigan's actions post-resignation are not directly implicated

> by the underlying claims. ...
>
> Nevertheless, while damages pertaining primarily to lost profits could potentially extend beyond the employment relationship, any harm that may be ongoing could be adequately compensated with money damages. ....[W]hether Plaintiff chooses to characterize the allegedly irreparable harms as loss of customers, goodwill, or competitive advantage, the reality is that the true irreparable damage has already been done.
>
> Any loss of goodwill from the actions of Willigan would have occurred at the time Hitech entered the marketplace or the first few months thereafter. Additionally, Plaintiff's motion is limited to specific clients that Willigan allegedly took with him after leaving NICE, so further loss of customers or competitive advantage is largely outside the scope of the motion. Furthermore, because Willigan now possesses the lawful right to compete with NICE, any irreparable harm that is ongoing is not actionable and is the natural result of a competitive marketplace. Therefore, any potentially irreparable harm that may have come about as a consequence of the alleged wrongful conduct by Willigan has already transpired or is continuing lawfully.

The district court ultimately denied plaintiff's motion for preliminary injunctive relief based upon the lack of proof that irreparable harm would result absent such relief.

**II. Motion to Compel**

Plaintiff now seeks to compel from all three defendants supplemental responses to plaintiff's written discovery requests.

**A. Rule 37 compliance**

Defendants first argue that plaintiff's motion is premature and fails to comply with LR 37.1. On January 12, 2007, plaintiff's counsel specifically requested that defendant Hitech alone reconsider its objections to two of plaintiff's 48 requests for production. On January 17, 2007, defense counsel responded with a detailed explanation of these two objections. Plaintiff did no further follow-up, instead filing the instant motion to compel attacking the basis of approximately thirty objections claimed by all three defendants. Defendants request that

plaintiff's motion to compel be denied absent full compliance with Rule 37, Fed. R. Civ. P. and LR 37.1, suggesting that it is "likely that the Court's involvement in many of these items can be avoided after appropriate consultation among counsel."

Although the court concludes that plaintiff has inadequately explored extra-judicial resolution of the parties' dispute, the pendency of summary judgment motions and the interests of justice favor judicial resolution of the parties' dispute at this time.

### B. Post Resignation Records

Central to the parties' dispute is the defendants' refusal to produce information (billing and financial records, correspondence and other business documents) relating to activities after January 23, 2006. Defendants contend that no information is relevant or discoverable after January 23, 2006, the date that Paul Willigan resigned from NICE and defendants became lawful competitors.

Plaintiff argues that post-resignation billing records are relevant and discoverable - even if that date was pivotal for purposes of the preliminary injunction - because the district court's decision was limited to that context. The court specifically held that any past harm would not be remedied by an injunction, and that any future harm could be adequately compensated by monetary damages. "[A]ny harm that may be ongoing [past January 23, 2006] could be adequately compensated with money damages." Plaintiff argues that many other post-January 23 records are discoverable because they are relevant to plaintiff's tortious business interference, copyright infringement, and misappropriation of proprietary materials claims, which claims were not at issue during the preliminary injunction hearing.

In arguing that the records are not subject to discovery, defendants rely heavily on the

district court's ruling on the preliminary injunction motion that "Willigan's actions post-resignation are not directly implicated by the underlying claims" because post-resignation, Willigan became a lawful competitor. Defendants' argument is persuasive except to the extent that plaintiffs seek post-resignation proof relating to alleged unlawful activity prior to January 23, 2006. The district court's preliminary injunction ruling ruled out the relevance of post-resignation documents except to the extent necessary to prove a continuation of wrongful conduct initiated prior to Willigan's resignation. On the other hand, defendants have represented that all evidence of revenues "earned prior to January 23, 2006" has already been produced.

Plaintiff's argument that all post-resignation documents are relevant to its tortious interference claim sweeps too broadly. Defendants have moved for summary judgment on the basis that plaintiff lacks evidence of the requisite malice or other ill-will. While all of defendants' post-resignation business records would not be relevant to a tortious interference claim, communications with past or present customers of plaintiff could be relevant. Therefore, the defendants will be required to produce this limited subset of post-resignation documents.

Post-resignation materials could also be relevant to copyright and misappropriation claims. Once again, however, defendants claim that they have already provided plaintiff with copies of all *blank* documents or forms and evidence regarding the software purchased by defendants. Plaintiff has alleged that the defendants copied its software and/or business forms including contact letters. Defendants are not required to produce *completed* letters, forms and reports to or from Hitech's customers - except for those documents relating to present or former NICE customers - because the additional customer information is proprietary and would not be relevant.

### C. Financial Records

Plaintiff seeks additional financial records. Defendants have produced documents showing deposits into bank accounts, but have not produced information concerning the source of those deposits. Plaintiff asserts that such information "may identify John Doe defendants assisting in the financing of Hitech Claims Consulting." Because plaintiffs have failed to adequately relate their request to existing claims, the request for additional information will be denied.

### D. Michael Willigan's Communications

Plaintiff initially sought "all communications from you to any third person regarding your skills, credentials or capabilities." Plaintiff explains that it seeks copies of any communications between Michael Willigan and DST Systems, in light of defendants' representation that Michael Willigan quit Hitech in July 2006 to return to his former Canadian employer. The defendants have already stated that they have no responsive communications. This court cannot compel production of non-existent documents.

### E. Interrogatory 17

Plaintiff served an interrogatory on Paul Willigan which asked:

> With respect to the allegations in your second affirmative defense that plaintiff's claims are barred by the doctrines of waiver, acquiescence, estoppel, or laches, state all facts on which you base this assertion, identify all documents relating to theses facts, and identify all persons having knowledge of these facts.

Paul Willigan responded simply: "I do not understand this question." The court agrees with plaintiff that defendant's objection is unnecessarily evasive given representation by experienced defense counsel. The question is not complex and that defendant will be required to respond.

### F. Interrogatory 20

Plaintiff seeks the identity of "all communications between you [defendant] and Nancy Welch of Indiana Insurance between January 1, 2006 and the present. Defendant objected to identifying communications in the post-resignation period, and further objected on the basis that the communications were "proprietary and confidential."

The court will require defendants to supplement. Paul Willigan has asserted a counterclaim which is based in part on alleged communications between Andrew Fahey and Nancy Welch of Indiana Insurance. The information is relevant and discoverable based both on plaintiff's tortious interference claim and defendant's similar counterclaim. To the extent that defendant legitimately fears disclosure of confidential portions of its communications to a competitor, the court remains confident that the parties can fashion an agreed protective order to prevent use of the information outside of this litigation.

### G. Requests for Production 26 and 27

These requests seek all of Hitech's financial documents relating to revenues "in minute detail." As previously discussed, financial records are relevant to plaintiff's alleged claims or damages only to the extent that revenues received by Hitech post-January 23, 2006 resulted from pre-resignation conduct for which Willigan is liable. Such records *might* be relevant to prove damages resulting from a tortious interference claim. However, such damages might as easily be proven from plaintiff's own financial records, i.e., loss of profits. Given the sensitivity of the records and limited relevance, if any, the court will deny plaintiff's request for production at this time.

### H. "Cherry-Picked" Documents

Plaintiff accuse defendants of "cherry-picking the responsive documents, choosing to disclose those papers they deem innocent enough yet withholding others." Plaintiff specifically accuses defendants of withholding records pertaining to cell phone and other telephone bills, as well as banking and credit card statements immediately prior to January 23, 2006 when Hitech opened for business. Plaintiff fails to identify specific requests which relate to the allegedly "missing" documents, but the court will assume their existence.

The court will not ascribe to defendants any improper motive in the apparent non-disclosure. However, the court will direct defendant to supplement to the extent that specific documents have been identified and requested for the period prior to January 23, 2006 which have not yet been disclosed.

### III. Motion To Withdraw

Defense counsel has moved to withdraw from representation of Michael Willigan. Because cross-motions for summary judgment have already been filed in this case, the court will not permit withdrawal prior to the completion of briefing on those motions, absent appearance of new counsel for Mr. Michael Willigan or a notice of his intent to represent himself *pro se*.

Accordingly, **IT IS ORDERED HEREIN AS FOLLOWS**:

1. Plaintiff's motion to compel defendants to supplement their discovery responses [DE #49] is **granted in part** and **denied in part**;

2. Defendants shall supplement their responses to requests for production of business records following January 23, 2006, to the extent that communications exist between any defendant and any present or former customer of plaintiff;

3. Defendant Paul Willigan shall fully answer Interrogatory 17;

4. Defendants shall supplement their responses to Interrogatory 20;

5. Defendants shall supplement responses to Requests for Production to the extent that specific documents have been identified and requested for the time period prior to January 23, 2006 but not yet produced;

6. All supplemental responses by defendants shall be served within fifteen (15) days of the date of this order;

7. Defense counsel's motion to withdraw from representation of defendant Michael Willigan [DE #50] is **denied** without prejudice to renew following the conclusion of briefing of the pending motions for summary judgment.  Counsel shall forward a copy of this order to Michael Willigan at his last known address;

8. Defendant Michael Willigan shall notify the court in writing of either the identity of new counsel or his intent to defend himself *pro se* in this litigation within thirty (30) days of the date of this order.

This the 9th day of March, 2007.

Signed By:
**J. Gregory Wehrman**
United States Magistrate Judge