**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**NORTHERN DIVISION**
**at COVINGTON**

**CIVIL ACTION NO. 06-28-DLB**

**NATIONAL INFORMATION AND COMMUNICATIONS EQUIPMENT**
**NETWORK INC., d/b/a NICE NETWORK, INC.**                                    **PLAINTIFF**

**vs.**                        **MEMORANDUM OPINION & ORDER**

**PAUL A. WILLIGAN, ET AL.**                                            **DEFENDANTS**

**\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\***

## I.   INTRODUCTION

This matter is before the Court upon Defendants' Motion for Summary Judgment as to all claims (Doc. # 53), Plaintiff's Motion for Partial Summary Judgment (Doc. # 55), and Plaintiff's Motion for Summary Judgment on Defendants' Counterclaims (Doc. # 56). Responses have been filed for each of the three respective motions (Docs. # 62, 58, 59) and Defendants filed a Reply in Support of its original motion for summary disposition on all of Plaintiff's claims (Doc. # 68).  Both parties have been provided the opportunity to supplement their briefing with discovery compelled beyond the dispositive motion schedule. To that effect, Plaintiff filed a supplement brief again requesting additional time on grounds that Defendants failed to comply with the Court's supplemental discovery orders.[1]  Oral argument was held on August 23, 2007.  Therefore, the motions are now ripe for the Court's review.

---

[1] Because further supplemental briefing is not necessary to adjudicate the pending motions, Plaintiff's request for additional time to do so is denied.

## II.   FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff, National Information and Communications Equipment Network, Inc., was incorporated in the state of Indiana in 1989 and does business as NICE Network, Inc. ("NICE").   NICE provides consulting services to the insurance and transit industries, assisting in the evaluation of high value equipment loss claims.  Andrew Fahey ("Fahey") is the founder of NICE and has at all times served as the company's President and majority shareholder, controlling 98% of NICE's stock.  The remaining two percent of NICE stock is held by Fahey's parents, Gene Fahey ("Gene") and Jane Fahey ("Jane").  Although incorporated in Indiana, NICE has maintained is principal place of business in Crescent Springs, Kentucky since 2002.

In 1991, NICE hired Defendant Paul Willigan ("Willigan") as a claims consultant. Willigan served as the Vice President of NICE from 1998 until his resignation on January 23, 2006.  In January of 2002, Willigan relocated to Connecticut when his wife accepted a job offer in Hartford.  Consequently, NICE accommodated Willigan's move by establishing a virtual private network connection (VPN) for Willigan to facilitate his continued employment with NICE, in addition to paying for Willigan's home operating expenses, which included internet and phone service as well as office supplies and equipment.  The VPN enabled Willigan to work from his new home in Connecticut by permitting access to NICE's files and software systems via the company's network server housed in Kentucky.

Near the end of August 2005, Willigan and his brother, Michael Willigan ("Michael"), established Hitech Claims Consulting ("Hitech"), registering the company as a limited liability company in Connecticut.   Willigan and his brother Michael were the sole members

of Hitech with sixty-percent to forty-percent ownership, respectively.[2]  Hitech is in the same business as, and is a direct competitor of, Willigan's former employer, NICE.  Over the five months that followed Hitech's formation, prior to Willigan's resignation from NICE in January of 2006, Willigan began to take the necessary steps that would eventually lead to the formal operation of Hitech as a competitor of NICE.  These steps included the training of his brother Michael in the claims consulting industry, which consisted of working on claims contracted to NICE, as opposed to Hitech, without prior authorization from Fahey.  Willigan admits that his brother worked on approximately one quarter of the NICE files originally assigned to Willigan and did so without informing Fahey.  This work necessarily involved access to all of NICE's systems and confidential customer files.

In January of 2006, Willigan and his brother Michael began doing business as claims consultants through their new company.  Discovery has revealed only one conversion by Willigan of a client from NICE to Hitech prior to Willigan resigning from NICE.  The new claim, from Shelley Ripley of Six and Geving Insurance, Inc., was opened on January 20, 2006, three days before Willigan would tender his resignation as Vice President of NICE to Fahey.  The claim generated approximately $400 in revenue for Willigan and Hitech.  On January 23, 2006, Willigan resigned from NICE "to move on to other opportunities."

The present action was commenced on February 8, 2006.  Plaintiff alleges claims for civil conspiracy, breach of fiduciary duty, conversion, misappropriation of trade secrets, copyright violations, and tortious interference with business relationships.  Plaintiff subsequently moved for a Preliminary Injunction (Doc. # 11) seeking to enjoin Defendants

---

[2] During the pendency of this matter, Michael resigned from his position at Hitech and, therefore, Willigan is now the sole member of Hitech.

from conducting business with NICE clients.  After an evidentiary hearing was conducted by the Court, Plaintiff's motion for injunctive relief was denied (Doc. # 48).[3]

Plaintiff now moves for summary judgment on three of its claims – civil conspiracy (Count 1), breach of fiduciary duty (Count II), and misappropriation of trade secrets (Count IV) – as well as on Defendant's counterclaims.  Defendants move for summary judgment on all of Plaintiff's claims.

### III.   STANDARD OF REVIEW

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986).  A dispute over a material fact cannot be "genuine" unless a reasonable jury could return a verdict for the nonmoving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  The court must "view the evidence and draw all reasonable inferences therefrom in the light most favorable to the non-moving party." *Little v. BP Exploration & Oil Co.*, 265 F.3d 357, 361 (6th Cir. 2001).

Once the movant has met its initial burden of establishing that summary judgment may be appropriate as a matter of law, the non-movant cannot rest on its pleadings, but must instead demonstrate that there is a genuine issue for trial. *See Celotex*, 477 U.S. at 324.  "The nonmoving party must do more than simply show that there is some

---

[3] At no point during Willigan's employment with NICE was he under an employment contract.  Rather, he was an at-will employee, and later officer.  Accordingly, there was never a covenant-not-to-compete made by Willigan and he was never subject to a non-competition agreement.

metaphysical doubt as to the material facts, it must present significant probative evidence in support of its complaint to defeat the motion for summary judgment." *Expert Masonry, Inc. v. Boone County*, 440 F.3d 336, 341 (6th Cir. 2006).  If a reasonable jury could not return a verdict for the nonmoving party based on the evidence construed in its favor, summary judgment should be granted to movant. *See Burchett v. Kiefer*, 310 F.3d 937, 942 (6th Cir. 2002).

## IV.   ANALYSIS[4]

### A.   Choice of Law

The parties disagree as to which state's law should be applied to Plaintiff's claims. At the very least, this controversy appears to significantly affect the analysis of Plaintiff's breach of fiduciary duty claim and, therefore, the choice of law question must be resolved to determine the substantive law of the case.  Plaintiff maintains that the application Kentucky law is appropriate because that is the law of the forum state and Kentucky's choice-of-law provisions dictate that Kentucky law applies when the underlying action possesses significant contacts with the forum state.  Defendants argue for the application of Indiana law because NICE is an Indiana corporation, despite its operation within Kentucky during the time period relevant to the case.  However, Defendants confine their choice of law discussion to the breach of fiduciary duty claim only.

---

[4] During oral argument, the Court briefly addressed this Court's subject matter jurisdiction with counsel.  Although the Court was not overly impressed with Plaintiff's summary of damages for diversity jurisdiction purposes, because it is not a legal certainty that Plaintiff in good faith cannot establish the jurisdictional amount in controversy, the Court concludes it has subject matter jurisdiction over this action.  *See Massachusetts Cas. Ins. Co. v. Harmon*, 88 F.3d 415, 416 (6th Cir. 1996)

"In diversity cases, the district court is to apply the choice of law rules of the state in which the court sits." *Andersons, Inc. v. Consol, Inc.*, 348 F.3d 496, 501 (6th Cir. 2003). "The courts of [Kentucky] are very egocentric or protective concerning choice of law questions." *Paine v. La Quinta Motor Inns, Inc.*, 736 S.W.2d 355, 357 (Ky. App. 1987), overruled on other grounds by *Oliver v. Schultz*, 885 S.W.2d 699 (Ky. 1994). "When a [Kentucky] court has jurisdiction of the parties its primary responsibility is to follow its own substantive law. The basic law is the law of the forum, which should not be displaced without valid reasons." *Foster v. Leggett*, 484 S.W.2d 827, 829 (Ky. 1972); *see also Boggess v. Price*, No. 04-5761, 2005 U.S. App. LEXIS 11281 (6th Cir. 2005) (unpublished). To that effect, "Kentucky courts have apparently applied Kentucky substantive law whenever possible . . . if there are sufficient contacts and no overwhelming interests to the contrary." *Harris Corp. v. Comair, Inc.*, 712 F.2d 1069, 1071 (6th Cir. 1983).

Therefore, in determining the applicable law in the case *sub judice*, the Court begins from a default presumption that Kentucky law will apply barring "overwhelming interests to the contrary." *Id.* In that regard, Defendants do not challenge the general application of Kentucky law to this action, nor could they. There is a clear absence of any significantly countervailing reason to deny Kentucky the application of its own substantive law. Defendants do not even suggest that Connecticut law should apply and rely solely on NICE's incorporation status as the overwhelming interest demanding that the Court supplant Kentucky law in favor of Indiana law. In addition to reliance on case law outside of this circuit and Kentucky more specifically, Defendants also rely primarily on the Restatement, which actually permits application of local law where a "more significant relationship exists." Restatement (Second) of Conflict of Laws, § 302(2) (2006).

In view of the complete lack of a relationship with the state of Indiana beyond mere incorporation, and the substantial relationship with the state of Kentucky, Kentucky law applies.  *See Harris*, 712 F.2d at 1071 (noting that Kentucky courts will even supplant contractual choice of law provisions where the forum state possesses "sufficient contacts" and any contrary interests relating to the chosen law are not overwhelming beyond the choice itself).

**B.    Breach of Fiduciary Duty**

As an officer of NICE, Willigan owed the corporation certain fiduciary duties recognized under Kentucky, namely the "duty of loyalty and faithfulness" as well as the "duty not to act against the employer's interest."   *Steelvest, Inc. v. Scansteel Service Center, Inc.*, 807 S.W.2d 476, 483 (Ky. 1991).  The fulfillment of these duties involves different responsibilities across the varied spectrum of employment contexts, just as the breach thereof can take many different forms.  In the case of Willigan, Plaintiff alleges that Defendant breached his fiduciary duties owed to NICE on four primary grounds: (1) establishing a competing enterprise (Hitech); (2) diverting NICE's business to Hitech; (3) attempting to cause dissension in NICE's ranks for Hitech's benefit; and (4) training a partner of a competing entity, which included the disclosure of sensitive internal and client-related materials.  Both parties now move for summary judgment on this claim.

Although Plaintiff points to several instances of breach, the primary controversy arose from Willigan's formation of a competing enterprise (Hitech), and the related act of training a partner of the competitor (Michael Willigan) utilizing NICE systems and files, all while employed as an office of NICE.  Defendants do not dispute either of these realities, despite efforts to minimize both the extent of the alleged breach and the resulting harm.

-7-

"Generally, in the absence of a contractual provision to the contrary, corporation fiduciaries, such as directors or officers, are free to resign and form an enterprise that competes with the corporation after they sever their connection with it." *Id.* "Kentucky law has, however, recognized that directors and officers of a corporation may not set up, or attempt to set up, an enterprise which is competitive with the business in which the corporation is engaged *while still serving as directors and officers*." *Id.* (emphasis added).

Here, the undisputed evidence establishes that Willigan registered Hitech, a direct competitor of NICE, roughly five months before leaving NICE. Subsequently, Willigan trained his brother, Michael, who was Vice President of Hitech and forty-percent shareholder, about the business of claims consulting using NICE resources and accounts. Although the extent of the benefit to Hitech is hotly contested by the parties, Willigan's conduct inevitably enabled Hitech to "roll-out" more quickly and with greater success establishing a client base, a percentage of which are clients formerly associated with NICE.

Although Defendants maintain that "Willigan's professional activities were performed on behalf of NICE Network right up until he resigned his employment," Plaintiff and the evidence disagree. Upon review of the record, there clearly exist questions of fact as to the extent of Willigan's breach, and the extent of damages causally resulting from the breach. Regardless of how Defendants attempt to paint the picture of Willigan's betrayal, issues of fact preclude summary judgment for either party on Plaintiff's breach of fiduciary duty claim.[5]

---

[5] Because damages resulting from any breach are an essential element of Plaintiff's breach of fiduciary duty claim, summary judgment in favor of Plaintiff is not warranted. *See Sparks v. ReMax Allstar Realty, Inc.*, 55 S.W.3d 343, 343 n. 15 (Ky. App. 2000).

## C.    Civil Conspiracy

Both parties also move for summary judgment on Plaintiff's claim for civil conspiracy, which alleges that Willigan and his brother Michael "entered into a civil conspiracy having numerous unlawful objects including: interfering with NICE Network's contractual and business relations...; misappropriating the trade secrets and intellectual property of NICE Network for their own use; and misappropriating ... NICE Network's business." Defendants assert that they did not conspire to perpetrate any unlawful act and imply that, regardless, civil conspiracy is not a cognizable claim under these facts. However, while many states do not permit conspiracy claims in a civil context, "Kentucky courts recognize a separate cause of action for civil conspiracy." *Stonestreet Farm, LLC v. Buckram Oak Holdings, N.V.*, No. 06-388-KSF, 2007 U.S. Dist. LEXIS 31313, at *17 (E.D. Ky. 2007) (unreported) (citing *James v. Wilson*, 95 S.W.3d 875, 897 (Ky. App. 2002)).

As an initial matter, Defendants take the Court's order denying Plaintiff's motion for preliminary injunction out of context in their conclusion that the formation of a competing business was not an unlawful act because "[t]his Court has already determined that it was permissible for them do so." (Doc. # 53, p. 17). The Court's prior order did not address the legality of forming a competing enterprise while under a fiduciary duty let alone conclude that it was permissible to do so. Nevertheless, the presence of an unlawful act does not in and of itself render Defendants' conduct actionable as a civil conspiracy under Kentucky law. The law is this area is muddled and authority is sparse. *See James v. Wilson*, 95 S.W.3d 875, 896 (Ky. App. 2002) (Civil conspiracy is "a topic rarely dealt with in Kentucky case law.").

As Defendants point out, however, "accurately speaking, there is no such thing as a civil action for conspiracy.  The action is for damages caused by acts committed pursuant to a formed conspiracy, rather than by the conspiracy itself; and unless something is actually done by one or more of the conspirators which results in damage, no civil action lies against anyone." *Davenport's Adm'x v. Crummies Creek Coal Co.*, 184 S.W.2d 887, 888 (Ky. App. 1945).  Because Kentucky follows this traditional view that a civil conspiracy can only stand on an unlawful act causing harm (i.e., conspiring unsuccessfully to commit an unlawful act is insufficient), the ultimate question in cases of civil conspiracy with an unlawful act, in terms of whether such a claim is independently actionable, asks whether the claim would be redundant under the circumstances of a particular case as seeking impermissible duplication of damages.[6]

However, the case *sub judice* appears to present the rare factual framework where an action for civil conspiracy was intended to operate.  Willigan is alleged to have breached his fiduciary duties during his employment with NICE, primarily for his conduct with respect to the formation of Hitech and the operation thereof while still employed at NICE.  Michael Willigan, although allegedly conspiring with his brother to breach those fiduciary duties, owed no duty himself.  Therefore, absent a private right of action for civil conspiracy, Michael Willigan would escape any liability as to the fiducial breach claim.  The availability

---

[6] In other words, because a civil conspiracy requires an unlawful act, if the conspirators are individually liable for the underlying act itself outside of any conspiracy claim, the addition of a conspiracy claim would be unnecessary.  Whereas alternative claims or grounds that make up an action often seek identical damages as a strategic decision to ensure liability for those damages on at least one theory of recovery, the requirement of an unlawful act for a civil conspiracy claim to stand effectively means that both the conspiracy claim and the underlying claim are merged for damage purposes, unless a plaintiff chooses not to allege the underlying claim for whatever reason.

of a civil conspiracy claim under Kentucky law, assuming the elements are established, would essentially render Michael Willigan jointly and severally liable for any damages caused by Willigan's breach of his fiduciary duties to the extent that Michael Willigan participated.

In general terms, to establish a conspiracy, Plaintiff "must show an unlawful/corrupt combination or agreement between the alleged conspirators to do by some concerted action an unlawful act." *James*, 95 S.W.3d at 897 (citing *Montgomery v. Milam*, 910 S.W.2d 237, 239 (Ky. 1995)). More specifically, especially as applied to Michael Willigan's liability for his brother's fiducial breach, Plaintiff must establish the following:

> For harm resulting to a third person from the tortious conduct of another, one is subject to liability if he (a) does a tortious act in concert with the other or pursuant to a common design with him, or *(b) knows that the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other so to conduct himself*, or (c) gives substantial assistance to the other in accomplishing a tortious result and his own conduct separately considered, constitutes a breach of duty to the third person.

*James*, 95 S.W.3d at 897 (emphasis added).

It is true that Michael Willigan's actions in forming and working for Hitech, independent of any conspiracy claim, were not civilly unlawful because no duty was owed. However, if Michael Willigan was aware that his brother's conduct constituted a breach of his fiducial duties yet chose to give "substantial assistance or encouragement," a claim for civil conspiracy may stand. Defendants' own authority recognizes that a civil action for conspiracy can stand where the allegedly unlawful act is "done by one or more of the conspirators" and "results in damage." Consequently, even though Michael Willigan did not owe NICE any fiducial duties, conspiring with Paul Willigan to breach his fiduciary duties is sufficient where damages were suffered by Plaintiff as a result of the breach, but Michael

Willigan would only be jointly liable for those damages extending from his conspiratorial activities and only where he owed a duty or possessed knowledge of a duty owed by his brother and co-conspirator.  Such a determination is left for the jury.

Accordingly, Plaintiff's claim for a civil conspiracy between Paul and Michael Willigan (as members of Hitech) survives summary judgment.  However, Plaintiff is not entitled to summary judgment because material facts remain in dispute and must be determined at trial, including: (1) the scope of the conspiracy (i.e., what unlawful acts beyond the fiducial breach), (2) Michael Willigan's knowledge of any duties owed by his brother Paul; and (3) the extent to which damages resulted from the conspiratorial objectives (i.e., Michael Willigan is only jointly liable for those unlawful acts that were carried out, were an object of the conspiracy, and resulted in damages).

**D.    Misappropriation of Trade Secrets**

In its Complaint, Plaintiff alleges that Defendants wrongfully and intentionally misappropriated proprietary and confidential information belonging to NICE.  In their cross motions for summary judgment, however, the parties seem to be arguing this claim in different terms.

Defendants move for summary judgment based on the asserted fact that Willigan did not take any trade secrets from NICE to Hitech following his resignation and that any software or other systems he now utilizes for the operation of Hitech were purchased after his resignation from NICE.  On the other hand, Plaintiff now appears to argue not that Willigan took trade secrets with him to Hitech following his resignation, but instead that Willigan's alleged sharing of trade secrets during his employment with NICE constituted the

statutory violation.[7]  Plaintiff also asserts that Michael Willigan similarly violated the statute by knowingly accepting and utilizing trade secrets that he allegedly understood was a breach of his brother's fiduciary duties owed to NICE.  Accordingly, the claim now before the Court as pled by Plaintiff involves the allegation that Defendants misappropriated the trade secrets of NICE by way of Willigan's disclosure to his brother while employed at NICE, as well as Michael Willigan's reciprocal act of knowingly accepting the protected information.

Plaintiff's misappropriation claims arise under the Kentucky Uniform Trade Secrets Act ("KUTA"), which is codified at K.R.S. § 365.880 et seq.  Pursuant to the KUTA, misappropriation is defined as:

(a)  *Acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means*; or
(b)  Disclosure or use of a trade secret of another without express or implied consent by a person who:
    1.  Used improper means to acquire knowledge of the trade secret; or
    2.  *At the time of disclosure or use, knew or had reason to know that his knowledge of the trade secret was:*
        a.  derived from or through a person who had utilized improper means to acquire it;
        b.  *Acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use;* or
        c.  *Derived from or through a person who owed a duty to the person seeking relief to maintain its secrecy or limit its use*; or

    3.  Before a material change of his position, knew or had reason to know that it was a trade secret and that knowledge of it had been acquired by accident or mistake.

---

[7] However, even though Plaintiff appears to have abandoned or perhaps never alleged that Willigan misappropriated trade secrets to Hitech following his resignation from NICE, the current allegations are identical for all intents and purposes because Willigan's alleged misappropriation during his employment to his brother, a member of Hitech, effectively constituted a misappropriation from NICE to Hitech.

K.R.S. § 365.880(2) (2006) (emphasis added).  Also, under the terms of the Act, "trade secret" refers to:

> ... information, including a formula, pattern, compilation, program, data, device, method, technique, or process, that: (a) derives independent economic value, actual or potential, from not being known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use, and (b) Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

K.R.S. § 365.880(4).

In order to prevail on its claim for a violation of the KUTA, Plaintiff "must present evidence which satisfies a two prong inquiry."  *BDT Prods., Inc. v. Lexmark Int'l, Inc.*, 274 F. Supp. 2d 880, 890 (E.D. Ky. 2003).  "First, [Plaintiff] must present evidence which indicates that the information they seek to protect qualifies as a protectable trade secret."  *Id.* (quoting *In re Dippin' Dots Patent Litigation*, 249 F. Supp. 2d 1346, 1375 (N.D. Ga. 2003)).  "To show the information is entitled to protection, Plaintiff must put forward evidence demonstrating that the information (1) has independent economic value, (2) is not readily ascertainable by proper means, and (3) was the subject of reasonable efforts to maintain its secrecy."  *Id.* (citing K.R.S. § 365.880).  Second "it is not enough merely to show that the information is entitled to protection.  Rather, Plaintiff must also show that the protected information has been misappropriated."  *BDT Prods.*, 274 F.Supp.2d at 890.  "To prove misappropriation, Plaintiff must show that the trade secret was acquired by improper means, was disclosed improperly, or was used by someone without proper consent."  *Id.* (quoting *Dippin' Dots*, 249 F.Supp.2d at 1375).

In basic terms, the inquiry is simply whether the allegedly misappropriated information was a trade secret and whether the information was actually misappropriated

-14-

under the statute.  Here, Plaintiff alleges that Willigan's "training" of his brother, a member of Hitech, while still working for NICE satisfies the statutory requirements for misappropriation.  Defendants, however, maintain that Willigan's actions with respect to his brother did not constitute misappropriation under the statute because Willigan was not given access to "trade secrets" and whatever access existed was permissible on grounds that Michael Willigan was assisting NICE by way of Paul Willigan, despite Michael and Paul's obvious affiliation with Hitech.

Plaintiff's misappropriation of trade secrets claim cannot survive if the allegedly misappropriated information does not constitute "trade secrets" under the KUTA.  In support of that claim, Plaintiff asserts that the trade secrets at issue include: "[1] specialized proprietary software, [2] a computerized claims tracking file management system, and [3] a portfolio of proprietary forms to enable NICE Network to efficiently verify the exact inventory and configuration of the damaged equipment, verify the current new and used market values of such equipment, and assess the apparent scope of damage and the potential salvage value."  (Doc. # 55, p. 9).  Plaintiff maintains that this information was valuable, was not publically known or ascertainable, and that NICE took reasonable efforts to maintain its secrecy.  To that effect, although Plaintiff directly traces the statutory requirements in its analysis, "the inquiry simply boils down to the question: was this information truly a secret?"  *BDT Prods.*, 274 F.Supp.2d at 891 (quoting *Penalty Kick Mgmt., Ltd. v. The Coca-Cola Co.*, 164 F.Supp.2d 1376, 1380-81 (N.D. Ga. 2001)).

In determining whether the information in question constitutes a protectable trade secret, Plaintiff's failure to provide the Court with any details about the alleged secrets beyond vague descriptions and conclusory allegations dooms that claim.  Although Plaintiff

-15-

has attempted to briefly discuss the element of taking steps to protect the purported secrets, Plaintiff has offered no evidence of why the identified materials constitute trade secrets beyond mere argument, such as why the items have independent value or whether they are readily ascertainable.  For that reason, because Plaintiff has failed to establish a genuine issue of material fact regarding the existence of any legally recognized trade secret, summary judgment in favor of Defendant is warranted on this claim, and Plaintiff's summary judgment motion on this claim is denied.[8]

**E.     State Law Conversion**

In the original complaint, Plaintiff originally asserted two grounds for the conversion claim: (1) Willigan's purchase of wine with NICE funds for his own personal use, and (2) $1,800 in payments for Willigan's personal home and cable television service that was originally paid by NICE because of an alleged fraud perpetrated by Willigan.  Defendants assert that Plaintiff has abandoned the "wine" claim because they did not address it in their response to its summary judgment motion.  The Court agrees.  By failing to specifically respond to Defendants' arguments on the "wine" claim, it has been abandoned.  *See Larimore v. Grant,* No. 3:03CV664-S, Slip Copy, 2006 WL 2037390, n. 3 (W.D.Ky. July 17, 2006) (declaring claim abandoned where the plaintiff failed to address the claim in brief in opposition to defendant's motion for summary judgment, but addressed other claims). *See also, Bradley v. Mary Rutan Hosp. Assoc.,* 322 F.Supp.2d 926, 931 n. 7 (S.D.Ohio 2004); *Kattar v. Three Rivers Area Hosp. Auth.,* 52 F.Supp.2d 789, 798 n. 7 (W.D.Mich.1999).

---

[8]  Because Plaintiff has failed to establish a genuine issue of material fact as to whether the information was a protectable trade secret, the Court need not address the propriety of whether there was a misappropriation by Paul or Michael Willigan.

Although Plaintiff did respond to the remaining conversion claim, the result is still the same – Defendant is entitled to summary judgment on Plaintiff's conversion claim.  A cause of action for conversion in Kentucky requires proof of seven elements:  (1) plaintiff has legal title to the converted property; (2) plaintiff had possession or the right to possession at the time of conversion; (3) defendant exercised dominion over the property, to defendant's use and enjoyment, such that plaintiff's right to use and enjoy the property was denied; (4) *defendant intended to interfere with plaintiff's possession*; (5) *plaintiff made some demand for the property's return which defendant refused*; (6) defendant's action caused plaintiff's loss of the property; and (7) plaintiff was damaged thereby (emphasis added).  *Kentucky Ass'n of Counties All Lines Fund Trust v. McClendon,* 157 S.W.3d 626, 632 n.12 (Ky. 2005)(quoting 90 C.J.S. *Trover and Conversion* § 4 (2004); *Meade v. Richardson Fuel, Inc.,* 166 S.W.3d 55, 58 (Ky. Ct. App. 2005).

In this case, because Plaintiff has failed to point to evidence in the record which establish a genuine issue of material fact regarding elements (4) and (5) above, Defendants' motion for summary judgment on Plaintiff's conversion claim is granted.

Even if Paul Willigan misled NICE into paying his home cable bill by insisting that the bill was "impossible" to sever into business costs (i.e., internet and phone) and personal costs, there is no evidence that Willigan intended to interfere with NICE's possession of those funds, or that NICE made a demand for the property's return which was refused by Willigan.  For these reasons, Defendant's motion for summary judgment on Plaintiff's conversion claim is granted.[9]

---

[9] Because Plaintiff cannot establish elements four and five of its conversion claim, the Court need not address the other elements of conversion.

## F.    Copyright Infringement

In the only federal question claim brought in its complaint, Plaintiff alleges that "NICE Network holds a copyright to certain materials, including specialized proprietary software, a computerized claims tracking file management system, and a portfolio of proprietary forms, which gave NICE Network a competitive edge in the marketplace."  Plaintiff submits that Defendants intentionally and willfully infringed these "copyrighted materials" and therefore are subject to statutory damages in the amount of $150,000 for each "work" infringed.

In their summary judgment motion, Defendants maintain that, aside from the lack of substantive merit underlying Plaintiff's copyright claim, the claim is not properly before the Court because "NICE Network lacks any valid copyright registration, which is a jurisdictional bar to maintaining such a claim."  Referring to registration as a "technical requirement that does not affect the existence of the cause of action," NICE argues that because the materials involved in this case are not derivative and were never published, registration should not be required.[10]  The Court disagrees.

NICE Network's concession that it has neither applied for nor received copyright registrations for any of the materials that it claims were infringed dooms its federal copyright claim.  Although NICE seeks to have the Court limit the Sixth Circuit's decision in *Murray Hill Publications, Inc. v. ABC Communications, Inc.*, 264 F.3d 622 (6th Cir. 2001) to only "derivative" works, the Sixth Circuit has not done so.  To the contrary, the Sixth Circuit has stated that registration is a prerequisite to filing any copyright infringement suit.

---

[10]  During oral argument, Plaintiff's counsel conceded that the materials had never been registered.

-18-

*Id.* at 630 (no action for infringement of the copyright in any United States work shall be instituted until registration of the copyright claim has been made in accordance with this title); *Lexmark Int'l Inc. v. Static Control Components, Inc.*, 387 F.3d 522, 533-34 (6th Cir. 2004) (registration of any copyright under 17 U.S.C. 411(a) is a jurisdictional prerequisite to filing a copyright infringement lawsuit).

Plaintiff's admitted failure to register any of its alleged materials compels the dismissal of its copyright claim. Accordingly, Count V of Plaintiff's complaint is dismissed without prejudice for lack of subject matter jurisdiction. Defendant's motion for summary judgment on Plaintiff's copyright claims is granted.

**G.    Tortious Interference**

In Count VI of its complaint, NICE alleges that Defendants tortiously interfered with its business relationships with its customers. More specifically, Plaintiff alleges that Defendants misappropriated customer information and diverted customer requests for consulting services from NICE to Hitech. Defendants have moved for summary judgment on this claim, arguing in part, that NICE is unable to satisfy the *mens rea* element of tortious interference.

To establish tortious interference, the plaintiff must establish six elements: (1) the existence of a business relationship; (2) the defendant's knowledge of the relationship; (3) that the defendant intended to interfere; (4) the defendant's conduct actually interfered with the relationship; (5) damages to the plaintiff; and (6) the defendant had no privilege or justification to excuse its conduct. *National Collegiate Athletic Association v. Hornung,* 754 S.W.2d 855, 857 (Ky. 1988); *CMI, Inc. v. Intoximeters, Inc.*, 918 F.Supp. 1068, 1079 (W.D. Ky. 1995).

-19-

In its response, Plaintiff does not specifically address Defendant's arguments on this claim, nor does Plaintiff analyze the elements of its tortious interference claim or point to anything in the record which would establish the elements of its claim.  Rather, the only mention of Defendant's "tortious" conduct is in the Conclusion, wherein Plaintiff states that "[t]heir tortious conduct between August 2005 and January 23, 2006 enabled Paul Willigan and Michael Willigan to shut the door on NICE Network and seconds later open Hitech Claims Consulting."  (Doc. # 62 at 10).  Plaintiff then concluded that it is entitled as a matter of law to ask a jury what value it assigns to the damages caused by Defendants' tortious conduct."  (*Id.* at 11).

There is neither evidence nor argument offered in Plaintiff's response to the motion for summary judgment to support the tortious interference allegations in Count VI.  By failing to specifically respond to Defendants' arguments on the tortious interference claim, the Court concludes that Plaintiff has abandoned this claim.  *See Larimore v. Grant,* No. 3:03CV664-S, Slip Copy, 2006 WL 2037390, n. 3 (W.D.Ky. July 17, 2006) (declaring claim abandoned where the plaintiff failed to address the claim in brief in opposition to defendant's motion for summary judgment, but addressed other claims).

In considering a motion for summary judgment, it is not the Court's job to sift through the record to find supporting evidence which would support one party's claims and the Court will not do so in this case.  *Interroyal Corp. v. Sponseller*, 889 F.2d 108, 110 (6th Cir. 1989), *cert. denied*, 494 U.S. 1091 (1990) ("[a] district court is not required to speculate on which portion of the record the nonmoving party relies, nor is it obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim."), *see also Skotak v. Tenneco Resins, Inc.,* 953 F.2d 909, 915 n. 7 (5th Cir.),

-20-

*cert. denied,* 113 S.Ct. 98 (1992) ( "Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment ....")

Because Plaintiff has failed to 'put up or shut up' on its tortious interference claim by identifying record evidence which would create a genuine dispute for the jury, Defendant's motion for summary judgment on Count VI is granted.[11]

## H.   Punitive Damages

Punitive damages are available under Kentucky law if a plaintiff proves by clear and convincing evidence that a defendant acted with oppression, fraud or malice.   K.R.S. § 411.184(2) (West 2006).  Additionally, punitive damages may be awarded where "gross negligence" is shown.  *Williams v. Wilson*, 972 S.W.2d 260, 262-65 (Ky. 1998).

In discussing the "gross negligence" standard, the Kentucky Court of Appeals has stated:

> While the courts of the Commonwealth have not always used precisely the same language in defining gross negligence, the prevailing understanding defines gross negligence as a "wanton or reckless disregard for the safety of other persons."  It is not necessary that the jury find the defendant to have acted with express malice; rather, it is possible that a certain course of conduct can be so outrageous that malice can be implied from the facts of the situation.

*Kinney v. Butcher*, 131 S.W.3d 357, 359 (Ky. App. 2004) (citation omitted).

With these principles in mind, the Court concludes that Plaintiff's claim for punitive damages survives summary judgment.   Although the parties certainly have placed a

---

[11]  Although Count VI has been dismissed as a separate cause of action, Plaintiff will have the opportunity to put forth evidence relating to the conduct of Paul and Michael Willigan between August 2005 and January 23, 2006 in support of its breach of fiduciary duty and civil conspiracy claims.

different spin on the conduct of Paul and Michael Willigan during the August 2005 to January 23, 2006 time period, there exists disputed issues of material fact that the Willigans acted with malice or gross negligence.  For that reason, Defendants' motion for summary judgment on Plaintiff's claim for punitive damages (Count VIII) is denied.

## I.      Respondeat Superior

An extended discussion of the merits of Count VII of Plaintiff's complaint is not warranted herein.  As stated by Defendants in their motion, respondeat superior is not a separately recognized cause of action under Kentucky law.  Rather, it is a theory of recovery.  As a result, Defendant's motion for summary judgment on Count VII of Plaintiff's complaint is granted.

## J.      Defendant Paul Willigan's Counterclaims[12]

### 1.      Breach of Employment Contract

Paul Willigan's breach of contract claim stems from a meeting between he and Andrew Fahey which occurred in December, 2004.  Both Willigan and Fahey agree that they met to discuss Willigan's future at NICE Network.  Although a number of issues were discussed, the most significant topics were Willigan's pay and his ongoing request to become an equity owner in NICE.

With regard to Willigan's breach of contract claim, Plaintiff argues that because the discussions between Fahey and Willigan were insufficient to constitute a contract as a

---

[12] In his response to Plaintiff's motion for summary judgment on his counterclaims, Paul Willigan agrees to dismiss his tortious interference claim without prejudice.  (Doc. # 59 at 2) As a result, Willigan's counterclaim for tortious interference is dismissed without prejudice, and the Court need not address the propriety of NICE's motion for summary judgment on that particular counterclaim.

matter of law, NICE is entitled to summary judgment.  More specifically, NICE points to various excerpts of Willigan's deposition testimony which, according to NICE, demonstrate that there was no contract formation because the terms were neither definite nor certain. Due to these uncertainties, argues NICE, there was not an enforceable contract which could be breached.

In his response, Willigan takes issue with NICE's characterization of their December, 2004 discussions.  More specifically, Willigan contends that the meeting concluded with an agreement to increase his pay structure, which included a provision that he would be paid based upon 75% of his labor billings, less expenses.  Willigan also contends that Fahey agreed that Willigan would become a 15% equity owner in NICE Network, entitling him to 15% of the company's annual profits in addition to his employee compensation.  Because of Fahey's pending divorce, the agreement was not reduced to a writing.   However, according to Willigan, the agreement would be implemented immediately, and even included an arrangement whereby the profit sharing arrangement would be retroactive to June 30, 2004, so that Willigan would receive 15% of NICE Network's profits realized since that date.  In support of his position that there was an enforceable contract, Willigan argues that despite the fact that the agreement was not in writing, NICE began performing the agreement, paying Willigan during 2005 based upon the new 75% pay arrangement.[13]

---

[13]  During his deposition, Willigan stated "[f]rom our December meeting, it was - - we had an agreement as to a new pay plan and that I would have equity ownership in NICE Network starting from July - - I thought I had it written down on one of these documents as to when it would begin, that it would be retroactive six months is what Andrew had agreed upon, that it would be the start of NICE Network's fiscal year that started - - whatever the first date of NICE Network's fiscal year of 2005, that I would get that ownership, 13 percent would come from NICE Network, two percent I would be able to purchase from his parents, and that the revenue sharing that I would get from that ownership could be used to pay for it, and that the ownership that I was getting from Andrew and NICE Network, the 13 percent, I'd be able to get at a 50 percent discount."  Willigan

The decision whether the parties intended to enter a contract must be based on an evaluation of the circumstances surrounding the parties' discussions. *Arnold Palmer Golf Co. v. Fuqua Industries, Inc.*, 541 F.2d 584 (6th Cir. 1976). However, disputed questions of contractual intent are considered factual issues which are ordinarily precluded from summary resolution. *P.F. Manley v. Plasti-Line, Inc.*, 808 F.2d 468, 471 (6th Cir. 1987). Simply put, whether the parties intended a contract is a factual one, not a legal one, and except in the clearest cases, the question is for the finder of fact to resolve. *Arnold Palmer*, 541 F.2d at 588. Against this backdrop, the alleged contract, or lack thereof, is reviewed.

Kentucky law echoes the Sixth Circuit in holding that "[t]he question of the existence of a contract is a question of fact for the jury to answer". *Audiovox Corp. v. Moody*, 737 S.W.2d 468 (Ky. Ct. App. 1987). However, as pointed out by NICE, Kentucky courts have recognized that "[n]ot every agreement or understanding rises to the level of a legally enforceable contract." *Kovacs v. Freeman*, 957 S.W.2d 251 (Ky. 1997). In order for there to be an enforceable contract, there must be unequivocal acceptance of an offer. *Venters v. Stewart*, 261 S.W.2d 444 (Ky. Ct. App. 1953). It is not enough that there are words or acts which imply a probable acceptance. *Id.* at 446.

The fact that the record indicates Willigan was paid in 2005 according to the terms agreed to during the December, 2004 meeting convinces the Court that there is a sufficient record to support the finding of an intent by both Willigan and Fahey to enter into an enforceable contract. Although there are other issues that Fahey wanted to discuss as listed in a memorandum that he prepared before the December meeting, the existence of

---

deposition at 109-110.

-24-

those issues does not warrant a finding as a matter of law that there was not an enforceable contract.

From the conflicting testimony of Willigan and Fahey, the parties have real differences in their perceptions of the December, 2004 meeting. Therefore, there are genuine issues of material fact regarding the intent of the parties and the existence of a contract. Summary judgment is not appropriate as the determination of a contract's existence is a task for the trier of fact. *Arnold Palmer*, 541 F.2d at 588; *Audiovox Corp.*, 737 S.W.2d at 471. Accordingly, Plaintiff's motion for summary judgment on Defendant's breach of contract counterclaim is denied.

### 2.   Fraudulent Inducement

Willigan's final claim for relief is a claim for fraudulent inducement. Willigan alleges that he was induced by Fahey's alleged false promises during the December, 2004 meeting. Based on those alleged promises, Willigan contends that he agreed to continue his employment with NICE Network to his detriment. According to Willigan, by accepting Fahey's profit sharing proposal, he decided to forego other employment opportunities. Willigan submits that by accepting Fahey's proposed compensation plan, it would only financially benefit him if NICE agreed to the 15% profit sharing arrangement. Without that added compensation, the new pay structure, whereby Willigan would receive 75% of his labor billings less expenses, was less advantageous to Willigan. In a nutshell, Willigan alleges that he was induced by Fahey's false promises to remain employed at NICE and to accept less money than he was making prior to the December, 2004 agreement.

In its brief response, NICE asserts that because Willigan has failed to identify any damages/injury resulting from Fahey's alleged false promises and representations, NICE is entitled to summary judgment on Willigan's fraudulent inducement claim.

In *Rivermont Inn, Inc. v. Bass Hotels Resorts, Inc.* 113 S.W.3d 636, (2003), the Court of Appeals of Kentucky recently set forth the elements of a fraudulent inducement claim. The claimant must prove that the defendant, or in the case *sub judice* the Plaintiff: (1) made a material representation; (2) which was false; (3) which was known to be false or made recklessly; (4) which was made with inducement to be acted upon; (5) which plaintiff (defendant) acted in reliance upon; and (6) which caused plaintiff (defendant) injury. Fraud may be established by evidence that is wholly circumstantial. *United Parcel Service Co. v. Rickert*, 996 S.W.2d 464, 468 (Ky. 1999).

Upon review of the record, including the depositions of Willigan and Fahey, the Court concludes that issues of fact preclude summary judgment on Willigan's counterclaim for fraudulent inducement. Accordingly, Plaintiff's motion for summary judgment on Willigan's fraudulent inducement claim is denied.

## V.   CONCLUSION

In accordance with the foregoing analysis, **IT IS ORDERED** as follows:

(1)     Defendants' Motion for Summary Judgment as to all claims (Doc. # 53) be, and hereby is, **granted in part** and **denied in part**;

(2)     Defendant's Motion for Summary Judgment (Doc. # 53) is **granted** as to Plaintiff's claims for conversion (Count III); misappropriation of trade secrets (Count IV); tortious interference (Count VI); and respondeat superior (Count

-26-

VII); and **these claims are dismissed with prejudice**.  Defendant's Motion for Summary Judgment is **granted** as to Plaintiff's copyright infringement claims (Count V), but that claim is **dismissed without prejudice**;

(3)     Defendant's Motion for Summary Judgment (Doc. # 53) is **denied** as to Plaintiff's claims for civil conspiracy (Count I); breach of fiduciary duty (Count II); and punitive damages (Count VIII);

(4)     Plaintiff's Motion for Partial Summary Judgment (Doc. # 55) on Counts I, II, and IV, be, and hereby is, **denied**; and

(5)     Plaintiff's Motion for Summary Judgment on Defendants' Counterclaims (Doc. # 56) be, and hereby is, **denied**.

This 11th day of October, 2007.

Signed By:

_David L. Bunning_

**United States District Judge**

G:\DATA\Opinions\2-06-28-NICE (MSJ).wpd